# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL JOSEPH GRIFFIN,<br><br>　　　　Defendant. | No. 3:19-cr-00133-RRB-DMS<br><br>**INITIAL REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS**<br>**[Doc. 22]** |

## I. INTRODUCTION

Defendant Michael Griffin has filed a motion to suppress evidence resulting from a traffic stop of his vehicle on March 29, 2017 by the Alaska State Troopers (AST) (Dkt. 22). Mr. Griffin's motion argues that statements he made during the stop regarding marijuana and cash in his vehicle must be suppressed because the stop constituted custodial interrogation and the trooper failed to Mirandize him (Dkt. 22 at 9, 11-12). The motion also argues the trooper "went beyond the scope of the traffic stop for speeding when he asked about the marijuana he smelled, cash observed in the glove box and the source of the cash" (Dkt. 22 at 8). The government responded in opposition, arguing that traffic stops do not constitute custodial interrogations for the purposes of *Miranda* and the trooper's questions did not unlawfully extend the stop (Dkt. 30). An evidentiary hearing was held (Dkt. 32).

The defendant's motion is now ripe for consideration. For the following reasons, the Court recommends the District Court DENY the motion to suppress.

## II. STATEMENT OF FACTS

On March 29, 2017, Alaska State Trooper Christopher Bitz was on duty in Cantwell, Alaska, a small town roughly halfway between Anchorage and Fairbanks, when he encountered a southbound vehicle traveling 13 miles per hour over the speed limit (Dkt. 34 at 5-9, 11). Bitz initiated a traffic stop (Dkt. 34 at 11).

Trooper Bitz testified the first thing he noticed when the vehicle came to a stop was that it had Canadian plates (Dkt. 34 at 12). The trooper contacted the vehicle and immediately recognized a strong odor of green or dry marijuana emanating from the open driver's side window (Dkt. 34 at 12-13, 45). Bitz testified that although marijuana had been legalized in Alaska for certain uses, individuals were not allowed to possess the substance in quantities over a certain amount (Dkt. 34 at 17-18). He also testified that with respect to the operation of a motor vehicle, officers are always concerned about impairment due to ingestion of marijuana (Dkt. 34 at 18).

Trooper Bitz explained to the driver that he had been traveling 68 miles per hour in a 55 mile per hour zone, asked for the driver's license, and asked whether the driver had "[a]ny guns, knives, bombs, drugs, anything I need to be concerned about" (Def. Ex. C at 2-3). The driver was the defendant, Michael Griffin (Dkt. 34 at 13-14). The defendant replied, "Nothing to be concerned with" (Def. Ex. C at 3). Bitz testified that he and other officers often asks drivers if they have any guns, bombs, or weapons out of concern for officer safety (Dkt. 34 at 14-15).

Trooper Bitz then asked Griffin how much marijuana was in his vehicle, explaining, "I can smell it super strong, so I know there's marijuana in there" (Def. Ex. C at 3). The defendant answered he had "a little . . . right here in the center console" (Def. Ex. C at 3). When Trooper Bitz asked how much marijuana that was, Griffin answered, "it's just a little bag . . . in a container here. Just a few buds in there" (Def. Ex. C at 4). Griffin then showed Bitz a clear plastic container—smaller than a loaf of bread, roughly the size of a tissue box—containing leafy buds consistent in appearance to marijuana, packaged in individual bags (Dkt. 34 at 19). Bitz testified the container was not visible until Griffin showed it to him (Dkt. 34 at 58). A photograph of this container was introduced as defense exhibit A (Dkt. 34 at 48, 61). Griffin told Bitz that he was not intending to sell the marijuana; he only smokes it but had not smoked recently before driving (Def. Ex. C at 4).

The driver identified himself with an Alaska license, which Bitz thought strange, since the vehicle bore Canadian plates (Dkt. 34 at 12-13). Bitz testified that he frequently encounters rental cars on the Parks Highway but described it as "very peculiar" to encounter an individual with an Alaska license, who resides in the state of Alaska, traveling from Fairbanks to Anchorage in a rental car (Dkt. 34 at 23).Trooper Bitz asked if the vehicle was a rental, referring to the Canadian plates, and Griffin confirmed that it was (Def. Ex. C at 4-5

Trooper Bitz testified that as he asked Mr. Griffin for relevant documentation, the defendant reached into areas where those documents are not generally kept (Dkt. 34 at 14). This raised officer safety concerns for the trooper

(Dkt. 34 at 14). Bitz suggested that Griffin look in the glove box (Def. Ex. C at 5). Roughly 50 seconds passed as Griffin checked the glove box (Gov. Ex. 1-A at 1:50-2:43). During this time, Trooper Bitz observed a box of ammunition, loaded magazines, and a pistol holder in the backseat of the vehicle (Dkt. 34 at 15). Bitz confronted Griffin, saying, "[Y]ou know I asked you if there was any guns or bombs or weapons in the vehicle, anything I need to be concerned about like that. You said there was not. But what about all this ammo and the magazines, and it looks like there's a pistol holster back here" (Def. Ex. C at 5). Griffin acknowledged that he had "a few guns" in his bags in the car (Def. Ex. C at 5-6) but denied having any guns on his person (Def. Ex. C at 6).

Trooper Bitz asked Griffin where he and his passenger were headed, and Griffin answered they were headed back to Anchorage from Fairbanks (Def. Ex. C at 6). Bitz informed Griffin that none of the paperwork Griffin had handed him included the vehicle registration and asked the passenger if he had any ID (Def. Ex. C at 6). The passenger said he did not (Def. Ex. C at 6-7). As Griffin continued to look for the vehicle registration, Trooper Bitz observed a shopping bag full of stacks of cash in the glovebox (Def. Ex. C at 5; Dkt. 34 at 20-22). A photograph of the glove box full of cash was introduced as defense exhibit B (Dkt. 34 at 52-53, 61). Trooper Bitz asked "is that marijuana all in that bag?" (Def. Ex. C at 7). When Griffin answered "No, no, no, no," Bitz continued, "What's all that money for? Okay, hey—what's going on with the vehicle today? What do you guys got going on? That is a lot of cash" (Def. Ex. C at 7).

Griffin told Bitz there was roughly $20,000 in cash in the bag and that it was money he had "saved, basically" by "getting donations from marijuana" (Def. Ex. C at 7-8). Audibly confused, Trooper Bitz asked Griffin, "Okay, how does that work?" (Def. Ex. C at 8). Griffin told him, "Basically, they call my number and they donate—they donate whatever they want to donate, and they get a free gift with their donation. . . . If they're 21 and older, they're allowed to get a free gift of marijuana" (Def. Ex. C at 8). Trooper Bitz asked Griffin if he had a license allowing him to sell marijuana in Alaska (Def. Ex. C at 9). Griffin answered no and explained this was why he gave it to them as "a free gift" (Def. Ex. C at 9).

Trooper Bitz then renewed his requests for the passenger's ID (Def. Ex. C at 9). The passenger stated that he lost his wallet in Fairbanks (Def. Ex. C at 9-10). As the passenger answered, Bitz asked what was in the bag he kept reaching for, and if there were any guns in it (Def. Ex. C at 9). The passenger answered no (Def. Ex. C at 9). The passenger then identified himself as Dennis Griffin and gave Trooper Bitz his birth date and social security number (Def. Ex. C at 10-11). Griffin told Trooper Bitz he had several pistols in the bag in the cab of the vehicle and several rifles in the trunk (Def. Ex. C at 12). Bitz confiscated the pistols for his safety for the duration of the stop (Def. Ex. C at 12).

Trooper Bitz returned to his vehicle and ran checks to ensure Mr. Griffin's license was valid and neither occupant had any outstanding warrants (Dkt. 34 at 28). Bitz was never able to obtain the vehicle registration, which contains the information relevant to citations and which by law must be kept in the vehicle for

provision to law enforcement (Dkt. 34 at 28-29). Trooper Bitz also ran checks on the firearms, which came back clean (Dkt. 34 at 29). Trooper Bitz called his Sergeant in Fairbanks to inform him of his observations and his plan to seize the vehicle in anticipation of applying for a search warrant (Dkt. 34 at 29). Bitz believed he had probable cause to believe Griffin was engaged in the illegal distribution of marijuana, based upon the amount of cash, the inconsistent statements regarding the possession of firearms, the firearms, and the individually packaged marijuana (Dkt. 34 at 29-30).

Trooper Bitz advised the defendant and his passenger he was seizing the vehicle to apply for a warrant (Dkt. 34 at 30). He instructed both men to exit the vehicle and patted them down to check for weapons (Dkt. 34 at 30-31). Griffin asked to retrieve clothes from the trunk of the car and Bitz stated he would get the clothes for him (Def. Ex. C at 24-25). When Bitz opened the trunk, he saw an AR-style rifle; a shotgun; multiple bags of luggage; and the shoes Mr. Griffin had requested, inside one of which was a digital scale typically used in drug trafficking and distribution (Dkt. 34 at 32-33). Bitz issued Griffin a traffic citation (Dkt. 34 at 30), and the car was towed to Cantwell, where it was searched pursuant to a warrant (Dkt. 34 at 36-37).

### III. APPLICABLE LAW

#### A. Traffic Stops

Police may detain or seize an individual for brief, investigatory purposes. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968); *United States v. Orman*, 486 F.3d 1170,

1173 (9th Cir. 2007). A *Terry* stop must be supported by reasonable suspicion in two ways.

First, there must be reasonable suspicion for initiating the stop. *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007); *United States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000). This determination is to be made based upon the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981). Probable cause to believe that a single traffic violation has occurred may lawfully support a stop. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Choudry*, 461 F.3d 1097, 1098 (holding that a civil parking violation also creates reasonable suspicion). The officer's subjective intention in making the stop has no bearing on the objective existence of reasonable suspicion. *Whren*, 517 U.S. at 814; *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Second, if the stop is prolonged for any purpose outside of the one that initiated it, the prolongation must also be supported by independent reasonable suspicion. *Rodriguez v. United States*, 575 U.S. 348 (2015); *see also United States v. Evans*, 786 F.3d 779 (9th Cir. 2015); *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019). A number of different factors may support reasonable suspicion. For instance, inconsistencies in a driver's story may support a reasonable suspicion of criminal activity; as may the discovery of large quantities of cash carried by a defendant; and, where other circumstances are present, discovery of weapons may support an inference a defendant is engaged in drug trafficking. *United States v. Baron*, 94 F.3d 1312, 1319 (9th Cir. 1996) (holding that inconsistencies in

defendant's stories supported additional questioning), overruled on other grounds by *United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007); *United States v. Rojas-Millan*, 234 F.3d 464, 470 (9th Cir. 2000) (holding that odd or vague answers to an officer's questions may justify further investigation); *United States v. Williams*, 880 F.3d 713, 721 (5th Cir. 2018) (finding that $10,000 in cash discovered in defendant's pockets during protective frisk created reasonable suspicion to search defendant's business); *United States v. Chhien*, 266 F.3d 1, 8 (1st Cir. 2001) (finding that defendant carrying $2,000 in cash justifiably elevated trooper's suspicions); *United States v. Carrasco*, 257 F.3d 1045, 1048-49 (9th Cir. 2001) (holding that, in spite of the defendant having only "a small quantity of drugs . . . in his possession," plastic baggies and scales found in defendant's vehicle "at the same time in the same place" as firearm and ammunition demonstrated sufficient nexus to suspect drug trafficking).

### B. Traffic Stops and *Miranda*

Government prosecutors may not use statements stemming from custodial interrogation of a defendant unless law enforcement observed certain procedural safeguards to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* warnings are not required where the defendant is not in custody. *See United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008); *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981).

The Supreme Court has explicitly rejected the contention that a traffic stop, in itself, renders the driver "in custody" for the purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 441–42 (1984) ("For the reasons indicated above, we reject

the contention that the initial stop of respondent's car, by itself, rendered him 'in custody.' And respondent has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest."). The Ninth Circuit stated this principle even more clearly in *United States v. Butler*, where it wrote, "A traffic stop is not custody." 249 F.3d 1094, 1098 (9th Cir. 2001).

## IV. DISCUSSION

### A. Trooper Bitz was Not Required to Give the Defendant *Miranda* Warnings Before Questioning Him

The defendant's argument for suppression on the basis of *Miranda* fails as a matter of law. A traffic stop is not "custody" for purposes of *Miranda*. *See Berkemer*, 486 U.S. at 441-42; *Butler*, 249 F.3d at 1098. No other circumstances which might transform the stop into a custodial arrest were present. Trooper Bitz did not use or threaten to use force; he did not handle his weapon, raise his voice or use threatening language, or otherwise intimidate the defendant; and the defendant was not handcuffed. Therefore, Mr. Griffin was not in "custodial interrogation" at the time of the traffic stop and Trooper Bitz was not required to Mirandize the defendant before eliciting statements regarding the marijuana, cash and weapons in his vehicle.

### B. Trooper Bitz's Questions Regarding the Marijuana, Cash, and Weapons He Observed in the Defendant's Vehicle Did Not Unlawfully Extend the Traffic Stop

The defendant's motion does not contend that Trooper Bitz lacked grounds to initiate a traffic stop of the defendant. It argues that Bitz "went beyond the scope of

the traffic stop for speeding when he asked about the marijuana he smelled, cash observed in the glove box and the source of the cash" (Dkt. 22 at 8).

Law enforcement may expand the scope of a traffic stop so long as the expansion is supported by independent reasonable suspicion. *See Rodriguez*, 575 U.S. at 355 ("An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, **absent the reasonable suspicion ordinarily demanded to justify detaining an individual**); *Evans*, 786 F.3d at 786 (holding the officer's decision to conduct ex-felon registration check and dog sniff "violated the Fourth Amendment, **unless there was independent reasonable suspicion justifying each prolongation**").

When Trooper Bitz contacted the defendant, he immediately informed him he was stopped for speeding. Bitz then asked Griffin if he had any weapons on him. Bitz testified that he and other officers ask questions like these in the interest of officer safety, and the Supreme Court has recognized that "[t]raffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez*, 575 U.S. at 356-57 (citing *Arizona v. Johnson*, 555 U.S. 323, 330 (2009); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (*per curiam*); *United States v. Holt*, 264 F.3d 1215, 1221-22 (10th Cir. 2001) (en banc)). As the only officer conducting the stop of two individuals on a relatively remote stretch of the Parks Highway, Trooper Bitz's concern for his safety was legitimate and this question was

reasonably related to the traffic mission of his stop. *See United States v. Buzzard*, 395 F.Supp.3d 750, 754 (S.D. W. Va. 2019) (finding that officer's question if defendant had any illegal items in the vehicle was "related to officer safety . . . [and] therefore related to the mission of the stop itself"). Griffin answered that he had "[n]othing [for Trooper Bitz] to be concerned with."

Trooper Bitz's third question was, "How much marijuana is in your vehicle today?" Bitz testified he had immediately recognized the smell of green or dry marijuana emanating from the vehicle, and he told Griffin, "I can smell it super strong, so I know there's marijuana in there, man." Although possession of one ounce or less of marijuana is not a criminal or civil offense in Alaska, *see* AK St. § 17.38.020, possession of more than one ounce of marijuana with intent to distribute **is**, *see* AK St. §§ 11.71.040, 11.71.190, unless distribution is performed by a retail marijuana store with a current, valid registration, *see* AK St. § 17.38.070. The "strong smell" of marijuana emanating from the defendant's vehicle created reasonable suspicion for Trooper Bitz to believe Griffin might be transporting marijuana in large quantities for the purposes of distribution. Thus, the smell, which was immediately apparent to the trooper, gave Bitz independent grounds to expand the stop's scope and ask about the marijuana.

Griffin's answer did not eliminate Trooper Bitz's suspicion he might be in illegal possession of drugs. Griffin showed Bitz a container of leafy buds that appeared to be marijuana, packed in individual bags. This individual packaging gave Bitz further grounds to suspect Griffin intended to distribute the marijuana.

Trooper Bitz received Griffin's license but continued to wait for Griffin to find the vehicle's registration. Routine checks of a driver's license and registration, and for any outstanding warrants, are part of traffic stop's "traffic mission." *See Rodriguez*, 575 at 345. In fact, numerous courts have held that additional questions asked while officers complete their routine checks do not unlawfully extend the stop beyond its traffic-related purpose. *See e.g.*, *United States v. Hill*, 852 F.3d 377, 383 (4th Cir. 2017) (holding that officer's decision to check third database rather than rely on first two did not unreasonably extend traffic stop); *United States v. Cone*, 868 F.3d 1150, 1155 (10th Cir. 2017) (holding that officer did not unlawfully expand scope of traffic stop by asking driver to step from his vehicle while he ran a background check); *United States v. Campbell*, 342 F.Supp.3d 375, 88-89 (W.D.N.Y. 2018) (finding that officer did not extend stop by contacting officer because call did not detain defendant "any longer than necessary for the normal activities associated with the traffic violation"); *United States v. Hendrix*, 143 F.Supp.3d 724, 728 (M.D. Tenn. 2015) (finding that arrival of second officer, who suspected driver might be on probation and asked him to step from car, did not prolong traffic stop because background check was still in progress).

As Griffin searched for the registration in the glove box, Trooper Bitz observed in plain view a box of ammunition, loaded magazines, and a pistol holder in the backseat of the vehicle. The presence of these items seemed to contradict Griffin's earlier statement that he did not have any weapons for Bitz to be concerned with, and Bitz confronted Griffin with this inconsistency. Inconsistencies

like these may contribute to reasonable suspicion of criminal activity, *see Baron*, 94 F.3d 1312, 1319, and Griffin's inconsistent account of whether he had any weapons in the vehicle created a legitimate officer safety concern for Trooper Bitz.

As Griffin continued his search, Trooper Bitz observed a shopping bag full of stacks of cash in the glovebox. Although possessing cash currency may on its own be entirely innocent, when combined with Griffin's inconsistent statement that he had no weapons, the strong smell of marijuana emanating from the vehicle, and the individually packaged buds, the $20,000 in currency Griffin was found driving with contributed to reasonable suspicion he was engaged in illegal drug activity and supported Trooper Bitz's request that Griffin account for the currency. *See Williams*, 880 F.3d at 721; *Chhien*, 266 F.3d at 8; *Carrasco*, 257 F.3d at 1048-49.

Griffin's answer—that he had saved the money he received as "donations" in exchange for doling out gifts of marijuana—finally confirmed Trooper Bitz's suspicion and created probable cause for believing the vehicle contained evidence of possession of controlled substances with intent to distribute.

In short, every step of the traffic stop presented Trooper Bitz with independent grounds for further expanding the scope of the traffic stop beyond the initial speeding infraction. Supreme Court precedent makes clear that Bitz's additional questions, though unrelated to speeding, were permissible. *See Rodriguez*, 575 U.S. at 355 ("An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop . . . [so long as he has] the reasonable suspicion ordinarily demanded to justify detaining an individual."); *see also United*

*States v. Murillo-Salgado*, 854 F.3d 407, 416 (8th Cir. 2017) ("traffic stop was not unlawfully prolonged given [the officer's] observations of the truck's contents, the seeming implausibilities and inconsistencies in the responses to [the officer's] routine questions, the reasonable suspicion [the officer] developed as a result those improbable responses, as well as from [the officer's] independent observations"); *United States v. Vargas*, 848 F.3d 971, 974 (11th Cir. 2017) (holding that "[a]ll of [the officer's] actions were taken in the lawful discharge of his duties" and "in the course of permissible 'ordinary inquiries'").

This Court recommends the District Court find that Trooper Bitz's expansion of the scope of the traffic stop was supported by independent reasonable suspicion and therefore lawful.

**C. The Search Warrant**

The defense argues that without Mr. Griffin's statements to Trooper Bitz, the affidavit supporting the application to search Griffin's car does not show probable cause. The defense does not argue the affidavit is otherwise defective. Above, the Court found that the totality of the circumstances of the stop created probable cause for Trooper Bitz to believe Mr. Griffin was in possession of marijuana with intent to distribute without a license. Because the traffic stop was lawful, the statements Griffin made to Trooper Bitz were properly included in the affidavit. Therefore, the Court recommends the District Court find the search warrant was valid.

/ /

## V. CONCLUSION

For the foregoing reasons this Court recommends the District Court DENY defendant's Motion to Suppress at Docket 22.

DATED this 27th day of March, 2020 at Anchorage, Alaska.

                                             S/DEBORAH M. SMITH
                                             CHIEF U.S. MAGISTRATE JUDGE

Pursuant to D. Ak. L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, April 10, 2020.** Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012). A district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000). Objections and responses shall not exceed five (5) pages in length and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **CLOSE OF BUSINESS, April 17, 2020.** The parties shall otherwise comply with provisions of D. Ak. L.M.R. 6(a). The shortened objection and response deadlines are necessary due to the looming trial date. D.AK.L.M.R. 6(a) authorizes the court to alter the standard objection deadlines.

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment. See *Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).